10-2786 (L)
USA v. Wolfson

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2010

(Argued: May 24, 2011                                    Decided: June 7, 2011)

Docket Nos. 10-2786-cr(L), 10-2878-cr(CON)
_____

UNITED STATES OF AMERICA,

*Appellee*,

-v.-

ALLEN WOLFSON,

*Defendant-Appellant*.

_____

Before:  KEARSE, POOLER, and LYNCH, *Circuit Judges*.

Defendant-Appellant Allen Wolfson appeals from two judgments of conviction entered in the United States District Court for the Southern District of New York (Koeltl, *J.*).  On appeal, Wolfson argues that the first judgment of conviction, entered upon a jury verdict, should be overturned, either because the evidence was insufficient to permit a jury to find a fiduciary duty, or because the jury was improperly instructed about how to determine the existence of a fiduciary duty.  Wolfson further argues that the second judgment of conviction should be overturned because his guilty plea, entered after his conviction in the first trial, was premised on the outcome of that trial.  We reject Wolfson's challenge to the jury instructions and **AFFIRM** both judgments of conviction.

_____

JAMES A. COHEN, Michael W. Martin, Fordham University
School of Law, Lincoln Square Legal Services, Inc., New York,
N.Y., *for Defendant-Appellant*.

RUSSELL CAPONE, Andrew L. Fish, Assistant United States
Attorneys, Of Counsel, *for* Preet Bharara, United States Attorney,
Southern District of New York, New York, N.Y., *for Appellee*.

_____

PER CURIAM:

Defendant-Appellant Allen Wolfson appeals from two judgments of conviction entered in the United States District Court for the Southern District of New York (Koeltl, *J.*). The first judgment was entered after a jury trial, which resulted in Wolfson's conviction on a number of different grounds, including securities fraud, relating to Wolfson's involvement in a "pump and dump" stock scheme. The second judgment resulted from a guilty plea in connection with a similar scheme involving different stock. We reject Wolfson's challenge to the jury instructions, and affirm both convictions.

The evidence at trial showed that Wolfson artificially inflated the prices of certain thinly-traded securities in which he had amassed a substantial interest, and then unloaded those holdings on unsuspecting investors. Of particular relevance to Wolfson's conviction, the scheme relied on corrupt stock brokers who sold the securities for prices far above their actual value. In exchange, Wolfson rewarded the brokers with exorbitant commissions. Some of the brokers failed to disclose the fact of the commissions to their customers. Others made affirmative misrepresentations about the size of these commissions.

On appeal, Wolfson argues that the brokers had no duty to disclose their commissions, and that his fraud convictions, which relied on the breach of that duty to establish a scheme to defraud, must therefore be overturned. Wolfson also argues that, even if a duty to disclose might arise in some contexts, the district court gave an improper fiduciary duty instruction. Finally, Wolfson submits that it was only because a jury had found him guilty in the first instance that he pled guilty in the second case, so that if we overturn the first judgment of conviction, the second should be reversed as well.

In the context of a motion made pursuant to Federal Rule of Criminal Procedure 33, the district court concluded that Wolfson's arguments were unavailing in light of our holding in *United States v. Szur*, 289 F.3d 200 (2d Cir. 2002). With the issue now before us on direct

-2-

appeal, we agree with the district court. Reviewing the jury instructions for plain error, because Wolfson did not timely object below, *see United States v. Middlemiss*, 217 F.3d 112, 121 (2d Cir. 2000), and taking the evidence in the light most favorable to the Government, we conclude that the jury was entitled to find that the brokers in this case had a duty to disclose their exorbitant commissions, just as they had a duty to refrain from making affirmative misrepresentations regarding the size of their commissions, and that the district court properly instructed the jury on the elements of that duty.

Although we have long held that there "is no *general* fiduciary duty inherent in an ordinary broker/customer relationship," we have also recognized that "a relationship of trust and confidence does exist between a broker and a customer with respect to those matters that have been entrusted to the broker." *Szur*, 289 F.3d at 211 (internal quotation marks omitted, emphasis added). As we explained in *United States v. Skelly*, 442 F.3d 94 (2d Cir. 2006), "[m]ost commonly, this relationship exists in situations in which a broker has discretionary authority over the customer's account." *Id.* at 98. However, a discretionary account is not the sole means by which a fiduciary duty may be created in the context of a broker-customer relationship; we have "recognized that particular factual circumstances may serve to create a fiduciary duty between a broker and his customer *even in the absence of a discretionary account*." *Id.* (emphasis added). Put otherwise, it is well settled in this Circuit that the presence of a discretionary account automatically implies a general fiduciary duty between a broker and customer, but the absence of a discretionary account does not mean that no fiduciary duty exists.

In *Szur*, which presented analogous facts and a nearly identical jury instruction, we upheld a fraud conviction premised on a "deprivation of honest services" theory of wire fraud under 18 U.S.C. § 1343 as modified by 18 U.S.C. § 1346. Jeffrey Szur, the owner and president of J.S. Securities, had convinced brokers to market stock in exchange for unusually large commissions, sometimes as much as 50 percent of the proceeds of the sale. *Szur*, 289 F.3d at

212. These brokers failed to disclose the size of the commissions to their customers. We held that, although the brokers owed no "*general* fiduciary duty resulting from discretionary authority . . . JSS was under a duty to disclose these exorbitant commissions because the information would have been relevant to a customer's decision to purchase the stock." *Id.* (emphasis added). This holding was an outgrowth of our pronouncement in *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1469 (2d Cir. 1996), where we explained that "[s]ales of securities by broker-dealers to their customers carry with them an implied representation that the prices charged in those transactions are reasonably related to the prices charged in an open and competitive market."

Wolfson argues that *United States v. Skelly*, which was factually similar in that it arose in the context of securities fraud, effectively limited the duty to disclose identified in *Szur* to claims of honest services fraud. This is simply not the case. The error we identified in *Skelly* was not that the brokers involved in the pump and dump scheme in that case had no fiduciary relationship with their customers, but that the district court omitted a key element of what it means to be a fiduciary from the jury charge. The instruction in *Skelly* was limited to a single sentence: "One acts in a fiduciary capacity when the business which he transacts or the money or property which he handles is not his or for his own benefit, but is for the benefit of another person as to who[m] he stands in relation implied and necessitating great confidence and trust on the one part, and a high degree of good faith on the other part." *Id.* at 98 (internal quotation marks and footnote omitted). The problem we identified with the charge was the fact that it "omitted the elements of 'reliance and de facto control and dominance,' which are required to establish a fiduciary relationship." *Id.* at 99 (quoting *Szur*, 289 F.3d at 210). In reaching that conclusion, *Skelly* favorably cited to the jury instruction in *Szur*, which included those elements. *Id.* (citing *Szur*, 289 F.3d at 210). As a result, *Skelly* stands for the proposition that a properly instructed jury may find that stock brokers have a duty to disclose material commissions to their customers, and can convict brokers who breach that duty of violating "the general antifraud

provisions of the securities laws" as well as the "comparable provisions of the wire fraud statute." *Id.* at 97. *Skelly* therefore reinforces, rather than undermines, the holding of *Szur*.

The controlling question in this case, then, is whether the jury was properly instructed. The district court instructed the jury in relevant part as follows:

> Whether a fiduciary relationship exists is a matter of fact for you, the jury, to determine. At the heart of the fiduciary relationship lies reliance and de facto control and dominance. The relationship exists when confidence is reposed on one side and there is resulting superiority and influence on the other. One acts in a fiduciary capacity when the business which he or she transacts or the money or property which he or she handles is not his own or for his or her own benefit but for the benefit of another person, as to whom he or she stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part.
>
> If you find that the government has shown beyond a reasonable doubt that a fiduciary relationship existed, such as between any one of the brokers and the customers you next consider whether there was a breach of the duties incumbent upon the fiduciary in the fiduciary relationship and specifically whether the defendant caused the broker or brokers to breach their fiduciary duties to customers. I instruct you that a fiduciary owes a duty of honest services to his customer, including a duty to disclose all material facts concerning the transaction entrusted to him or her. The concealment by a fiduciary of material information which he or she is under a duty to disclose to another, under circumstances where the nondisclosure can or does result in harm to the other is a [b]reach of the fiduciary duty and can be a violation of the federal securities laws, if the government has proven beyond a reasonable doubt the other elements of this offense, as I explained them to you.

That instruction is identical in all material respects to the charge given in Szur. *See Szur*, 289 F.3d at 210. Because we find no principled basis on which to distinguish this case from *Szur*, we

-5-

conclude that there was no error in the charge, and affirm Wolfson's first conviction.[1]  That

conclusion necessarily defeats Wolfson's argument challenging his subsequent guilty plea and so

we also affirm his second judgment of conviction.

## CONCLUSION

We have considered Appellant's remaining contentions and find them to be without merit.

We **AFFIRM** both judgments of the district court in their entirety.

---

[1]  Wolfson also argues that his trial counsel was ineffective for failing to object to the district court's jury instruction on fiduciary duty.  "[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance," because the collateral attack allows for additional fact finding.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Here, however, we have found no error in the jury instruction, and therefore, counsel could not have been ineffective for failing to object to it—no additional fact finding could alter this conclusion.