10-4250-cr
USA v. Mavashev

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 20th day of January, two thousand twelve.

Present: ROBERT A. KATZMANN,
 GERARD E. LYNCH,
  *Circuit Judges*,
 LEWIS A. KAPLAN,
  *District Judge*.[*]

---

UNITED STATES OF AMERICA,

  *Appellee*,

 - v. -  No. 10-4250-cr

ROMAN MAVASHEV,

  *Defendant-Appellant*.

---

For Defendant-Appellant: LAWRENCE F. RUGGIERO, Law Offices of Lawrence F. Ruggiero, New York, N.Y.

For Appellee: STEPHEN J. MEYER (David C. James, Amir Toosi, *on the brief*), Assistant United States Attorneys, *of counsel*, *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, N.Y.

---

[*] The Honorable Lewis A. Kaplan, United States District Judge for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Eastern District of New York (Irizarry, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-appellant Roman Mavashev appeals from a judgment of conviction entered on October 15, 2010, by the United States District Court for the Eastern District of New York (Irizarry, *J.*), following a jury trial. Mavashev was convicted of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 1349, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, and three substantive counts of bank fraud, in violation of 18 U.S.C. § 1344. The district court sentenced Mavashev to 120 months' imprisonment, five years of supervised release, restitution in the amount of $2,784,753, and $500 in special assessments. Mavashev raises six issues on appeal: (1) whether the district court erred in giving a conscious avoidance charge and, if not, whether the charge on this point was erroneous; (2) whether the district court improperly admitted evidence of other crimes pursuant to Federal Rule of Evidence 404(b); (3) whether the district court improperly admitted expert testimony; (4) whether the government engaged in prosecutorial misconduct during summation; (5) whether the questioning of the government's case agent violated Mavashev's Fifth Amendment rights; and (6) whether Mavashev's sentence was substantively unreasonable. We assume the parties' familiarity with the facts and procedural history of this case.

Turning first to Mavashev's contention that the district court erred in charging the jury with a conscious avoidance instruction, we generally review jury instructions *de novo*, reversing only if the defendant was prejudiced by the instructions as a whole. *United States v. Applins*, 637 F.3d 59, 72 (2d Cir.2011). Unobjected-to instructions, however, are reviewed for plain

error.  *United States v. Wolfson*, 642 F.3d 293, 294 (2d Cir.2011) (per curiam).  Here, while

Mavashev did object to the inclusion of a conscious avoidance charge, he did not object to the

specific language of the district court's conscious avoidance charge.  We have held that a

conscious avoidance instruction is warranted when "(1) the defendant asserts the lack of some

specific aspect of knowledge required for conviction, and (2) the appropriate factual predicate

for the charge exists, *i.e.*, the evidence is such that a rational juror may reach the conclusion

beyond a reasonable doubt that the defendant was aware of a high probability of the fact in

dispute and consciously avoided confirming that fact. "  *United States v. Svoboda*, 347 F.3d 471,

480 (2d Cir. 2003) (internal quotation marks omitted).  Here, Mavashev asserted that he lacked

knowledge that the loan applications processed from his firms were fraudulent, and the

appropriate factual predicate existed because, as Mavashev concedes, "the documentary proof

and the testimony of the bank witnesses, the expert and FBI agent Moriarty were all supportive

of conscious avoidance."  Def. Br. 13.  Notwithstanding the factual basis for the charge,

Mavashev principally contends that the charge was erroneous for two reasons.  First, he argues

that the charge should not have been provided because the government did not argue a conscious

avoidance theory at trial.  Second, he argues that even if providing the charge was appropriate,

the language of this particular charge amounted to plain error.

As to Mavashev's first argument, as Mavashev concedes, there was a factual basis for the

charge of conscious avoidance.  Moreover, we have held that "[t]he government need not choose

between an actual knowledge and a conscious avoidance theory."  *United States v. Ferguson*, ---

F.3d ----, No. 08-6211-cr, 2011 WL 6351862, at *10 (2d Cir. Dec. 19, 2011) (citing *United*

3

*States v. Kaplan*, 490 F.3d 110, 128 n.7 (2d Cir. 2007)).  We therefore cannot conclude that the inclusion of the conscious avoidance charge was erroneous.

As to Mavashev's second argument, we have held "a conscious avoidance charge must communicate two points: (1) that a jury may infer knowledge of the existence of a particular fact if the defendant is aware of a high probability of its existence, (2) unless the defendant actually believes that it does not exist."  *United States v. Kaiser*, 609 F.3d 556, 565-66 (2d Cir. 2010) (internal quotation marks omitted).  Here, the language of the charge was unquestionably erroneous in failing to require a finding that the defendant was aware of the high probability of the existence of the allegedly avoided fact.  *See id.* at 566-67 (collecting cases).  The error, however, was harmless for several reasons.  First, although the district court erroneously defined conscious avoidance at the outset of the charge, it only specifically cross-referenced that definition in connection with a single count.  With respect to the other counts, the charge defined "knowledge" or "knowing" correctly, without referencing the conscious avoidance charge.  Second, in defining both bank fraud and wire fraud, the court repeatedly instructed the jury that in order to convict, the jury needed to find beyond a reasonable doubt that Mavashev "acted with the specific intent to defraud," and/or "with the specific intent to deceive and to cause harm." The jury's verdict on those counts thus reflects a finding that Mavashev not only avoided confirming that the loan applications contained misrepresentations, but that he affirmatively desired to deceive the lenders in connection with those applications.  Such a finding presupposes actual knowledge that the loan applications were deceptive.  Third, the government did not argue conscious avoidance at all in its summation, relying instead exclusively on actual knowledge, not conscious avoidance.  It is thus highly unlikely that the jury convicted Mavashev based on a

4

conscious avoidance theory. Fourth, there was compelling evidence that Mavashev had actual knowledge that the loan applications were fraudulent. *See United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003) ("[A]n unwarranted conscious avoidance instruction is harmless error where there is overwhelming evidence of actual knowledge.") (internal quotation marks omitted). According to trial testimony, in addition to purchasing a PDF program so that loan processors could alter appraisals, Mavashev showed loan processors how to fabricate documents and draft fraudulent sales contracts. And in preparation for an audit by New York State Banking Authority, Mavashev instructed his employees to cleanse NGF's mortgage files of any evidence of the cutting and pasting of signatures. Finally, the fact that Mavashev failed to include many fraudulent loan transactions on the application log that he was required to maintain lends further support to the government's theory that Mavashev had actual knowledge that these transactions were fraudulent.

We next turn to Mavashev's argument that the district court improperly admitted evidence of other crimes pursuant to Federal Rule of Evidence 404(b). We review the district court's evidentiary rulings for abuse of discretion. *United States v. Cadet*, No. 10-4220-cr, --- F.3d ----, 2011 WL 6353779, at *3 (2d Cir. Dec. 20, 2011). Rule 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Evidence of uncharged criminal activity is not considered "other crimes" evidence subject to Rule 404(b) where it constitutes direct evidence of the crimes charged in the indictment. *See, e.g.*, *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct

5

evidence of the conspiracy itself.").  In *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), we identified three categories of uncharged criminal activity that constitute direct evidence of the charged offense:

> [E]vidence of uncharged criminal activity is not considered "other crimes" evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.

*Id.* (internal quotation marks omitted).  Evidence of uncharged acts is also admissible to demonstrate "a pattern of conduct engaged in by defendant and others of which the crime charged was part."  *United States v. Papadakis*, 510 F.2d 287, 295 (2d Cir. 1975) (internal quotation marks omitted).

Here, certain of the trial testimony referred to allegedly fraudulent transactions that were not among the eleven in which Mavashev presided over the closings.  But the district court did not abuse its discretion in permitting it.  First, much of it was proof at least of the conspiracy charges.  Second, all of it was "inextricably intertwined with the evidence regarding the charged" transactions, *Towne*, 870 F.2d at 886, and tended to show "a pattern of conduct . . . of which the crime[s] charged [were] part," *Papadakis*, 510 F.2d at 295 (internal quotation marks omitted).  Specifically, because the testimony demonstrated that Mavashev and his co-conspirators treated all loan applications the same, regardless of which lenders the applications were sent to, the evidence of the uncharged fraudulent transactions was inextricably linked to the evidence of the charged transactions.  Moreover, the uncharged fraudulent transactions demonstrated a pattern of criminal conduct because they shared the following commonalities with the charged transactions:  they were each purportedly brokered by NGF and closed by the Law Office of

6

Roman Mavashev; they were each for primary residences; they were each for 100 percent financing; and a single borrower was purchasing multiple properties and including conflicting information in the applications. Thus, contrary to Mavashev's contention, this testimony was properly admitted as direct evidence of the charged offenses.

Mavashev next argues that the district court erred in permitting Agent Moriarty to offer expert testimony without determining whether he was a qualified and reliable expert witness under Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education, may testify in the form of an opinion or otherwise, if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

By contrast, Federal Rule of Evidence 701, which governs the admission of non-expert opinion testimony, provides as follows:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

A witness's "specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise.'" *United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007) (quoting *Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 181 (2d Cir. 2004)). The "improper admission of [expert] testimony in violation of Rule 701(c) is reviewed under the 'harmless error' standard." *Bank of China*, 359 F.3d at 183.

7

In this case, the district court did not abuse its discretion in permitting Agent Moriarty to testify without qualifying him as an expert because his testimony primarily described what he actually did during the course of his investigation and thus "was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise" in fraudulent mortgage transactions. *See id.* at 181. While he occasionally defined certain technical terms, such as "flip deal" and "straw buyer," he only defined these terms in order to describe specific facts in this case. In any case, even if some of the testimony did constitute expert testimony, we conclude that any error was harmless because the purportedly improper testimony only constituted a small portion of Moriarty's testimony and the evidence against Mavashev was substantial.[1]

The next issue raised by Mavashev on appeal is whether the government deprived Mavashev of a fair trial by engaging in misconduct during summation. It is well-established that during closing statements, both the prosecution and the defense "are generally entitled to wide latitude . . . so long as they do not misstate the evidence." *United States v. Tocco*, 135 F.3d 116, 130 (2d Cir. 1998). Statements amounting to prosecutorial misconduct during summation do not warrant reversal unless they cause the defendant "substantial prejudice" in that they "'so infect[] the trial with unfairness as to make the resulting conviction a denial of due process.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Darden v. Wainwright*, 477 U.S. 168,

---

[1] At trial, in addition to presenting evidence that Mavashev presided over eleven mortgage closings in which a single borrower purchased multiple properties at the same time by obtaining loans from separate lenders who knew nothing about the other transactions, the government presented evidence that Mavashev engaged in an illegal flip transaction on two occasions. Certain co-conspirators also testified that Mavashev showed them how to draft fraudulent sales contracts and alter documents to support mortgage applications, purchased them a PDF program in order to alter appraisals, and instructed them to cleanse NGF's mortgage files so there was no evidence of cutting and pasting of signatures in the files.

8

181 (1986)).  This Court has adopted a three-part test for determining whether a prosecutor's improper comments deprived a defendant of a fair trial.  Specifically, we consider "(1) the severity of any misconduct, (2) the measures taken to cure the misstatements, and (3) their likely effect on the outcome."  *United States v. Forlorma*, 94 F.3d 91, 95 (2d Cir. 1996).

On appeal, Mavashev complains about the following remarks made during the prosecutor's summation:

> You heard from Agent Moriarty, he found approximately 50 deals that were nowhere to be found on the defendant's disclosures to the New York State Banking Department. Nowhere to be found.  So, when the defense has kind of suggested that these are the only 11 transactions that he engaged in fraud that's not true, let's be clear.  These are the ones that were put in front[] of [you] to . . . highlight what the defendant was.

App. 796.

The first portion of the quoted remarks was unobjectionable.  Mavashev defended in part on the theory that the eleven loans in the closing of which he participated were isolated and possible negligent aberrations in NGF's operation and, in any case, that Mavashev lacked culpable knowledge.  The remarks to which he objects came in the course of a lengthy argument, the object of which was to convince the jury, on the basis of the failures to report other transactions and other evidence, that Mavashev acted with culpable knowledge for purposes of both the conspiracy and substantive counts.

The final sentence was of questionable propriety.  The suggestion that the charged crimes did not constitute the sum of the defendant's wrongdoing, and that they were only samples of crimes chosen to illustrate "what the defendant was," risked diverting the jury's attention from the crimes charged in the indictment to some broader speculation about his bad character.  Nevertheless, even assuming *arguendo* that the remark was improper, this relatively brief

9

comment cannot be said to have deprived Mavashev of a fair trial because it was merely an "aberration in an otherwise fair proceeding." *See United States v. Elias*, 285 F.3d 183, 191 (2d Cir. 2002). Moreover, because the evidence against Mavashev was very strong, the prosecutor's comments were not at all likely to have affected the outcome of the trial. Accordingly, we cannot conclude that the government's summation denied Mavashev a fair trial.

We now turn to Mavashev's contention that his Fifth Amendment rights were violated by Moriarty's testimony that, when he interviewed Mavashev, Mavashev never asserted that Irina Khaimov was involved in fraud and had duped Mavashev. During his opening statement, Mavashev's attorney claimed that Mavashev was "duped, tricked, and manipulated into this scheme without knowing what was going on around him." Gov't App. 21. To rebut these claims, the government elicited testimony from Agent Moriarty about two pre-arrest interviews he had with Mavashev in which Mavashev did not claim that Khaimov had duped him. Specifically, the government asked Moriarty whether Mavashev had claimed that Khaimov committed fraud or duped him and Moriarty responded that Mavashev had not made those claims during the interviews. On cross-examination, defense counsel asked whether Moriarty ever specifically asked Mavashev if Khaimov was committing fraud or duped Mavashev and the agent testified that he did not ask those questions.

While the Supreme Court has held that "the use of prearrest silence to impeach a defendant's credibility does not violate the Constitution," *Jenkins v. Anderson*, 447 U.S. 231, 240-41 (1980), neither the Supreme Court nor this Court has determined whether evidence of prearrest silence may be introduced in the government's case-in-chief where, as here, the defendant does not take the stand. Here, however, the government did not introduce evidence of

10

prearrest silence. No evidence was presented that Mavashev invoked his right to remain silent or in any other way refused to answer any of Moriarty's questions. Rather, the government simply elicited an account of what Mavashev did say during the interview, and highlighted that he did not make the claims that became a feature of his defense. In any case, even if the admission of this testimony were erroneous, any error was harmless. The significance of the two questions regarding Mavashev's failure to volunteer that he was duped by Khaimov during prearrest interviews was *de minimis* in the context of the lengthy trial record, especially since the government did not refer to this testimony in its summation or rebuttal. Moreover, because, as previously noted, the evidence of Mavashev's guilt was very substantial, it is exceedingly unlikely that the challenged testimony altered the outcome of the case.

Mavashev's final argument on appeal is that the district court's sentence of 120 months' imprisonment was substantively unreasonable. We review sentences for reasonableness. *See United States v. Cavera*, 550 F.3d 180, 187 (2d Cir. 2008) (en banc). The substantive reasonableness inquiry assesses "the length of the sentence imposed in light of the factors enumerated under 18 U.S.C. § 3553(a)." *United States v. Villafuerte*, 502 F.3d 204, 206 (2d Cir. 2007). Reasonableness review employs a "deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Although we do not presume that a sentence within the Guidelines range is reasonable, we have recognized that "in the overwhelming majority of cases, a Guidelines sentence will fall comfortably within the broad range of sentences that would be reasonable in the particular circumstance." *United States v. Fernandez*, 443 F.3d 19, 27 (2d Cir. 2006).

11

Upon careful review of the record, we conclude that the below-Guidelines sentence rendered by the district court was procedurally and substantively reasonable. The district court properly considered all of the arguments Mavashev now raises, but concluded that they did not warrant a lesser sentence. In particular, the district court concluded that the emotional and financial hardship suffered by Mavashev's family are no different than those suffered by the families of any incarcerated defendant who has children, and noted that, if anything, Mavashev's family is in a better position than most families because his wife is educated and has a career. And while the district court acknowledged Mavashev's community service, it determined that his good works did not outweigh other factors militating in favor of a lengthy sentence, including the magnitude of his crimes and his efforts to cover them up. Finally, while Mavashev argues that his sentence is substantively unreasonable in light of the more lenient sentence imposed on co-conspirator Khaimov, it is inappropriate to compare Mavashev's sentence to Khaimov's sentence because these defendants are not similarly situated. Unlike Mavashev, Khaimov pled guilty, accepted responsibility for her crimes, and made efforts to cooperate with the government. Moreover, as noted by the district court, unlike Mavashev, Khaimov was not an attorney at the time of the offenses. Given these differences, we cannot conclude that the district court erred in imposing a harsher sentence on Mavashev than on Khaimov. We thus conclude that "the sentence imposed falls within the broad range that can be considered reasonable under the totality of the circumstances." *See United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008).

We have considered all of Defendant-appellant's remaining arguments and find them to be without merit. For the reasons stated above, the judgement of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

12