**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 18-3454

———————

UNITED STATES OF AMERICA

v.

LOUIS F. PETROSSI,

Appellant

—————————————————————————

On Appeal from the United States District Court for the
Middle District of Pennsylvania
(District Court No.: 1-17-cr-00192-001)
District Judge:  Honorable Christopher C. Conner

—————————————————————————

Submitted under Third Circuit L.A.R. 34.1(a)
on July 9, 2019

Before:  McKEE, ROTH and RENDELL, <u>Circuit Judges</u>

————

O P I N I O N*

————

**RENDELL**, *Circuit Judge*:

    Louis F. Petrossi was indicted in the Eastern District of New York for his part in a

fraudulent scheme involving the securities of an energy company, Forcefield Energy, Inc.

—————————————

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Even though a post-bond release agreement in that matter barred him from employment directly involving investors, Petrossi continued to own and operate two investment funds: Chadwicke Partners and Chadwicke Ventures (collectively "Chadwicke"). While on post-bond release, he falsely overstated the cost and value of securities owned by Chadwicke to recruit investors and told them that their money would go to equity in privately-held startups. Much of their money, in fact, went to Petrossi's personal expenses.

The Chadwicke scheme was uncovered and Petrossi was indicted in the United States District Court for the Middle District of Pennsylvania for investment advisor fraud, securities fraud, and wire fraud. The indictment included a statutory penalty enhancement because the crimes occurred while he was on post-bond release. *See* 18 U.S.C. § 3147. The jury convicted Petrossi on all three counts of fraud and found that he was subject to the enhancement. The District Court sentenced him to one hundred months and three days' imprisonment.

On appeal, Petrossi claims that he is not an "investment advisor," that he owed no duty to Chadwicke's investors to disclose his indictment, and that the District Court erred by admitting testimony regarding the Forcefield scheme. He further claims that we should remand for re-sentencing because the Court improperly enhanced his sentence and improperly calculated the amount of loss caused by his conduct. We disagree and will affirm Petrossi's conviction and sentence.[1]

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

**A. Sufficient evidence supported Petrossi's conviction.**

Petrossi argues that the evidence is insufficient to establish that he is an "investment advisor." But he failed to challenge the sufficiency of evidence in the District Court. We thus will only vacate the conviction if the evidence is "so insufficient that for us to uphold his conviction would result in a miscarriage of justice or be fundamentally wrong." *United States v. Barel*, 939 F.2d 26, 31 (3d Cir. 1991). Viewing the evidence in a light most favorable to the Government,[2] there is more than sufficient evidence to conclude that Petrossi is a "person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2(a)(11). The Government established that Petrossi: (1) sent investors business plans that "recommend[ed] 10% of one's portfolio for prudent asset allocation in late stage companies," Supp. App. 231; (2) received both a single-time fee and a fee after profits for the investments, Supp. App. 49; and (3) held himself out as an investment advisor who can "*help* accredited *investors* invest in companies." Supp. App. 230 (emphasis added). *See United States v. Miller*, 833 F.3d 274, 282 (3d Cir. 2016) (finding a person is an investment advisor if "he held himself out as a person who

_____

[2] Petrossi fails to heed this standard of review for a sufficiency of evidence challenge by pointing only to the evidence that supports the conclusion that he is not an investment advisor, and ignoring the wealth of evidence in the other direction. *Compare* App. Br. at 27–30 (citing to defense witnesses and cross-examination testimony) *with* App. 88–90 (victim describing Petrossi's presentation that discussed investing in startup companies, followed by a personal pitch to get involved in Chadwicke and advice about a specific company); App. 96–97 (describing Petrossi as "pushing" late stage pre-IPO's and personally discussing investment options).

provides investment advice."). Because the above evidence shows Petrossi "engage[d] in the business of advising others" about the "value of securities" for "compensation," 15 U.S.C. § 80b-2(a)(11), it is not plain error to conclude Petrossi is an investment advisor that owed a fiduciary duty to his investors.

Petrossi argues that, even if he is an investment advisor, he had no duty to disclose the EDNY indictment to investors because he was not a *registered* investor under the applicable SEC rules. Petrossi claims that because he had no duty to disclose, the jury may have convicted him on a legally insufficient theory—fraud by omission—which warrants reversal. But under plain error review, any error "must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Here the evidence is overwhelming that the jury convicted Petrossi for fraud by misrepresentation. The indictment itself targets two misrepresentations: "(a) falsely claiming to investors that the money they had invested in Chadwicke would be used to invest in the equity of privately-held startup companies when, in reality, Petrossi used investors' money to pay for personal expenses; and (b) disseminating to investors fraudulent statements that overstated both the cost of the securities held by Chadwicke and the value of those securities." App. 34. The government presented evidence to support those theories throughout the trial. The FBI forensic accountant testified that, after reviewing Petrossi's accounts, over $1.3 million of the approximately $1.8 million in investor funds received went to non-stock, non-fund purchases. Ruth Higby, a victim of the scheme, testified that the distribution of investment and non-investment funds "is not how it was represented to [her], and [she]

4

would not have invested" in Chadwicke if Petrossi accurately portrayed his intent. Supp. App. 29. Petrossi also led victims to believe he would invest significant portions of their money in "major players [and] Silicon Valley insiders." Supp. App. 259. They felt misled when they learned that Chadwicke primarily invested in three companies that Petrossi had past dealings with: Search Initiatives, Grom Social, and R. Post. *See* Supp. App. 11–12, 202–03. Taken together, there is overwhelming evidence to conclude that Petrossi is an investment advisor who misrepresented material facts to his investors in order to obtain investments that went to his personal expenses. Thus, Petrossi fails to establish prejudice because there is overwhelming evidence to conclude that the jury convicted Petrossi on the legally sufficient theory of fraud by misrepresentation.[3] *See, e.g., United States v. Skelly*, 442 F.3d 94, 99 (2d Cir. 2006) (affirming the conviction where "it is overwhelmingly likely that any reasonable juror would have convicted on the basis of the Government's primary theory.").[4]

## B. The District Court did not abuse its discretion by admitting Sanchez's and St. Julien's testimony.

Petrossi argues that the District Court abused its discretion by admitting pretrial service officer Misty Sanchez's testimony under Federal Rule of Evidence 404 and

---

[3] Even so, Petrossi's claim that his failure to disclose the indictment constitutes fraud by omission rings hollow when, as part of the indictment and post-bond release, he was barred from handling investments. Thus, when he claimed he could "help accredited investors invest in companies," Supp. App. 230, his omission could reasonably be viewed as an active misrepresentation.

[4] For the same reasons, we conclude there was sufficient evidence to convict Petrossi for securities fraud and wire fraud.

failing to exclude it under Rule 403. Sanchez testified that, as a condition of post-bond release in the EDNY matter, Petrossi signed an agreement prohibiting him from violating state or federal law and from any employment "directly involving the handling of investors." App. 39. She testified that she consistently reviewed the conditions of release with Petrossi but that he claimed "he did consulting work" and was not handling investor money. Supp. App. 8–9.

Rule 404 prohibits "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Evidence of uncharged crimes is admissible under Rule 404(b) if it: (1) has a proper evidentiary purpose; (2) is relevant; (3) satisfies Rule 403; and (4) is accompanied by a limiting instruction if requested. *See United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010) (citing *United States v. Butch*, 256 F.3d 171, 175 (3d Cir. 2001)). Thus, evidence of a prior act may nonetheless be admitted if the government identifies a proper evidentiary purpose. Here, Sanchez's testimony was admissible because it established the terms of the post-bond agreement that Petrossi violated. *See United States v. Gibbs*, 190 F.3d 188, 217–18 (3d Cir. 1999) (admitting past uncharged offenses when they served as direct proof of the charged offense). Petrossi nonetheless argues that the District Court should have excluded the evidence under Rule 403 because its probative value is outweighed by its unfair prejudice. Moreover, he claims that because he offered to stipulate to the terms of the agreement, Sanchez's testimony was especially prejudicial. *See Old Chief v. United States*, 519 U.S. 172, 191 (1997) (excluding testimony when stipulation was offered and

6

"the functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the [stipulation]."). But here, Sanchez's testimony offered much more than a stipulation could offer: It established that Petrossi and Sanchez reviewed the conditions of the agreement and that he nonetheless continued to handle investments and lied about his work. The District Court further offered a limiting instruction to ensure the jury would not use the evidence of the prior indictment as propensity evidence.[5] Thus, the district court did not abuse its discretion by permitting Sanchez to testify.

Petrossi also argues that the testimony of Richard St. Julien was inadmissible under Rule 404(b). St. Julien testified as a cooperating witness who participated in the Forcefield scheme. He testified that, as in the Chadwicke scheme, Petrossi "introduced [us] to some investors and also to these investment conference[s] I was not familiar with. So he was making—number one, he introduce[d] us to these conference[s], registered him or us at these conferences, ma[d]e presentation introduction[s] of the company and where we also made presentation[s] and offer[ed] . . . financing." App. 63. At these conferences, Petrossi solicited "potential investors . . . accredited investors and some non-accredited investors . . . looking to invest in [the] potential business." App. 64. St. Julien also presented significant testimony about Search Initiatives, R. Post, and Grom Social.

---

[5] *See* App. 122 ("This evidence of other acts will be admitted for a very limited purpose. You may consider this evidence for the purpose of deciding whether the defendant had the knowledge or the intent to commit fraud as charged in the indictment in this case. Do not consider this evidence for any other purpose."); App. 129 (policing the bounds of Sanchez's testimony by restricting the admission of Forcefield related testimony).

He testified that the "C.E.O. of Forcefield Energy was a director of Grom [Social]," App. 83, and that Petrossi asked St. Julien if an overseas holding corporation used in the Forcefield scheme could "receive some of the warrants that [were] owed by R. Post to [Petrossi] for previous work he did." App. 85. He also testified that Mr. Petrossi told him that he received compensation from Search Initiatives and that "the company was growing quick and it was going well and that he had a banker interested in taking them public and they would go public." App. 82.

Petrossi argues that this testimony is nothing more than propensity evidence: an attempt to admit the past wrongdoings of Petrossi in the Forcefield scheme so that the jury will draw an adverse inference in this scheme. But the evidence about Forcefield addresses Petrossi's common scheme to defraud as it is "part[] of a single series of events" and "tend[s] to show a motive for the charged crime and hence establish the commission of that crime, the identity of the actor, or his intention." *Government of V.I. v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992). St. Julien described identical activity as the victim investors in the Chadwicke scheme, including solicitations through presentations and investment conferences. St. Julien further testified that Petrossi received compensation from R. Post, Grom Social, and Search Initiatives during this time period. These three companies comprised Chadwicke's primary investments, and tend to show Petrossi's motive for investing in these companies, rather than the "Silicon Valley Insiders." Supp. App. 259. In addition to the proper evidentiary purpose, the District Court offered limiting instructions to correct any risk the jury would use the Forcefield

8

scheme as propensity evidence.[6]  Thus, the District Court did not abuse its discretion in admitting St. Julien's Testimony.

## C. The District Court did not err when applying the sentencing guidelines.

We exercise plenary review over a district court's interpretation of the sentencing guidelines. *Miller*, 833 F.3d at 279.  We review its factual findings for clear error. *Id.*  If a claim was not raised below, we review for plain error. *United States v. Flores-Mejia*, 759 F.3d 253, 256–59 (3d Cir. 2014) (en banc).  Petrossi first argues that the District Court erred when it concluded he was an "investment advisor" and enhanced his sentence.  For the reasons outlined in Section A, Petrossi is an investment advisor, and thus the District Court did not err.

Petrossi next argues that the District Court erred when it concluded that the Forcefield scheme was "relevant conduct" for purposes of assessing loss and enhancing his sentence.  But Petrossi expressly waived this argument in the District Court.  When this issue was presented, Petrossi's attorney stated that:

> I was not as clear in my objections as I probably should have been. My concern is this. If the court is not inclined to follow 5G1.3 in a concurrent sentence because of the relevant conduct incorporating both ForceField as well as Chadwicke, then I would raise this objection. So my concern is that if the court does not believe that 5G1.3 would then apply for any sentence that this court would impose should run concurrent with the New York case, then I would want to raise it as an issue . . . I don't wish to lose the benefit of

---

[6] *See* ECF 1:17-cr-00192-CCC Doc. 80 p. 139 ("Specifically you may not use this evidence to conclude that because the defendant may have committed the other acts, he must also have committed the acts charged in the indictment. Remember, the defendant is on trial here only for securities fraud, investment advisor fraud, and wire fraud between January 2015 and January 2017, not for these other acts. Do not return a guilty verdict unless the government proves the crimes charged in the indictment beyond a reasonable doubt.").

what I believe should be a concurrent sentence . . . Because if the court is inclined to follow 1.3 then I will not raise this as a challenge to the loss amount . . . ."

App. 207–08. The Government stated "[i]f Your Honor agrees with our position, we would not object to having Your Honor's sentence imposed in this action run concurrent to the sentence that's been imposed on the defendant in the ForceField action." App. 208–09. The Court agreed, and Petrossi stated, "then I would withdraw that objection and that would be fine moving on to the second one." App. 209. In essence, Petrossi received the benefit of an agreement from the Government and the Court that the sentence would run concurrently, rather than consecutively, if it concluded that the Forcefield conduct is "relevant conduct." He withdrew his objection on that basis. Thus, Petrossi's argument that the Forcefield scheme is not "relevant conduct" is waived.[7]

Finally, Petrossi argues that the District Court failed to state adequate findings on the record when it calculated total loss to investors. In doing so, Petrossi relies on expert testimony that provided a present day valuation of Chadwicke's assets. The District Court did not clearly err when it relied on the presentencing report's evaluation of total loss to investors and discredited the expert's testimony, which was primarily related to present day valuation and restitution, not total loss. Contrary to Petrossi's claim that the District Court's reasoning was inadequate, it was well supported by the record, which indicated that the Court considered all arguments from both sides before determining total loss. App. 252 ("I've taken into consideration the testimony just received, the

---

[7] Petrossi's argument that the Court applied the wrong Guideline provision to establish "relevant conduct" is also waived.

arguments of counsel."); *cf. Chavez-Meza v. United States*, 138 S. Ct. 1959, 1965 (2018) ("In some cases, it may be sufficient for purposes of appellate review that the judge simply relied upon the record, while making clear that he or she has considered the parties' arguments and taken account of the § 3553(a) factors, among others."). Thus, the District Court did not err when it calculated total loss for purposes of restitution to investors.

## Conclusion

We will affirm Petrossi's conviction and the District Court's sentencing order.