16-3327-cv (L)
*Allen v. Credit Suisse Secs. (USA) LLC*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2016

Nos. 16-3327-cv (L), 16-3571-cv (CON)

DORIS SUE ALLEN, DONNA S. LUCAS, JONATHAN G. AXELROD,
DANA KELLEN, HEDY L. ANSELMAN, TIMOTHY R. GARRETT,
WARREN J. PEPICELLI, JOHN A. BOARDMAN,
*Plaintiffs-Appellants*,

v.

CREDIT SUISSE SECURITIES (USA) LLC, DEUTSCHE BANK AG, MORGAN
STANLEY, MORGAN STANLEY & CO. LLC, MORGAN STANLEY CAPITAL
SERVICES LLC, CREDIT SUISSE AG, BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A., BARCLAYS PLC, BARCLAYS BANK PLC,
BARCLAYS CAPITAL INC., CITIBANK, N.A., CITIGROUP INC., THE
GOLDMAN SACHS GROUP, INC., GOLDMAN, SACHS & CO., HSBC
HOLDINGS PLC, HSBC BANK PLC, HSBC NORTH AMERICA HOLDINGS
INC., HSBC BANK USA, N.A., JPMORGAN CHASE BANK, N.A.,
JPMORGAN CHASE & CO., THE ROYAL BANK OF SCOTLAND PLC, THE
ROYAL BANK OF SCOTLAND GROUP PLC, RBS SECURITIES INC., UBS
AG, UBS SECURITIES LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH
INCORPORATED, BNP PARIBAS GROUP, BNP PARIBAS NORTH AMERICA,
INC., UBS INVESTMENT BANK, UBS INVESTMENT BANK, AMERICAS,

UBS GROUP AG, MERRILL LYNCH CAPITAL SERVICES, INC., BARCLAYS
GROUP US INC.,
*Defendants-Appellees*,

CREDIT SUISSE GROUP AG, CREDIT SUISSE SECURITIES (EUROPE)
LIMITED, DOES, 1–30, DOES, 1–40, BNP PARIBAS SECURITIES CORP.,
CITICORP, CITIGROUP GLOBAL MARKETS INC., BNP PRIME BROKERAGE
INC.,
*Defendants*.

⎯⎯⎯⎯⎯⎯

On Appeal from the United States District Court
for the Southern District of New York

⎯⎯⎯⎯⎯⎯

ARGUED: JUNE 22, 2017
DECIDED: JULY 10, 2018

⎯⎯⎯⎯⎯⎯

Before: JACOBS, LEVAL, RAGGI, *Circuit Judges*

⎯⎯⎯⎯⎯⎯

On appeal from a judgment entered in the United States District Court for the Southern District of New York (Schofield, *J.*), dismissing plaintiffs' ERISA complaint for failure to state claims for which relief can be granted, *see* Fed. R. Civ. P. 12(b)(6), plaintiffs fault the district court for failing to recognize that the defendant banks acted as ERISA functional fiduciaries in conducting the foreign currency exchange transactions here at issue and, thus, that their alleged manipulation of the foreign exchange market breached ERISA fiduciary duties owed to plaintiffs' employee benefit plans. Plaintiffs further fault the

district court's denial of their request for a 60-day adjournment and leave to file a fourth amended complaint.

AFFIRMED.

———————

REGINA M. MARKEY (J. Brian McTigue, *on the brief*), McTigue Law LLP, Washington, D.C., *for Plaintiffs-Appellants*.

DAVID G. JANUSZEWSKI (Herbert S. Washer, Elai Katz, Jason M. Hall, Sheila C. Ramesh, *on the brief*), Cahill Gordon & Reindel LLP, New York, New York, *for Defendants-Appellees Credit Suisse AG and Credit Suisse Securities (USA) LLC*.

MATTHEW A. SCHWARTZ (Yvonne S. Quinn, David H. Braff, *on the brief*), Sullivan & Cromwell LLP, New York, New York, *for Defendants-Appellees Barclays PLC, Barclays Bank PLC, Barclays Capital Inc., and Barclays Group US Inc.*

Adam S. Hakki, Richard F. Schwed, Jeffrey J. Resetarits, Shearman & Sterling LLP, New York, New York, *for Defendants-Appellees Bank of America Corporation, Bank of America, N.A., Merrill Lynch, Pierce, Fenner &*

3

*Smith Incorporated, and Merrill Lynch Capital Services, Inc.*

David C. Esseks, Laura R. Hall, Rebecca Delfiner, Allen & Overy LLP, New York, New York; John Terzaken, Allen & Overy LLP, Washington, D.C., *for Defendants-Appellees BNP Paribas Group and BNP Paribas North America, Inc., and Defendants BNP Paribas Securities Corp. and BNP Prime Brokerage, Inc.*

Andrew A. Ruffino, Covington & Burling LLP, New York, New York; Alan M. Wiseman, Thomas A. Isaacson, Andrew D. Lazerow, Julie M. Edmond, Jamie A. Heine, Covington & Burling LLP, Washington, D.C., *for Defendants-Appellees Citibank, N.A. and Citigroup Inc.*

Joseph Serino, Jr., Eric F. Leon, Latham & Watkins LLP, New York, New York, *for Defendant-Appellee Deutsche Bank AG.*

Thomas J. Moloney, George S. Cary, Sue S. Guan, Cleary Gottlieb Steen & Hamilton LLP, New York, New York, *for Defendants-Appellees The Goldman Sachs Group, Inc. and Goldman, Sachs & Co.*

4

Gregory T. Casamento, Locke Lord LLP, New York, New York; Roger B. Cowie, Locke Lord LLP, Dallas, Texas; J. Matthew Goodin, Julia C. Webb, Locke Lord LLP, Chicago, Illinois, *for Defendants-Appellees HSBC Holdings PLC, HSBC Bank PLC, HSBC North America Holdings Inc., and HSBC Bank USA, N.A.*

Peter E. Greene, Boris Bershteyn, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York; Stephen L. Ratner, Russell L. Hirschhorn, Proskauer Rose LLP, New York, New York, *for Defendants-Appellees JPMorgan Chase & Co. and JPMorgan Chase Bank, N.A.*

Jonathan M. Moses, Bradley R. Wilson, Wachtell, Lipton, Rosen & Katz, New York, New York, *for Defendants-Appellees Morgan Stanley, Morgan Stanley & Co. LLC, and Morgan Stanley Capital Services LLC.*

Joel M. Cohen, Melissa C. King, Davis Polk & Wardwell LLP, New York, New York, *for Defendants-Appellees The Royal Bank of Scotland PLC, The Royal Bank of Scotland Group PLC, and RBS Securities Inc.*

D. Jarrett Arp, Melanie L. Katsur, Gibson Dunn & Crutcher LLP, Washington, D.C.; Mark A. Kirsch, Indraneel Sur, Gibson Dunn & Crutcher LLP, New York, New York, *for Defendants-Appellees UBS AG, UBS Group AG, UBS Securities LLC, UBS Investment Bank, and UBS Investment Bank, Americas.*

REENA RAGGI, *Circuit Judge*:

In this civil action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), the named plaintiffs, acting on behalf of a putative class of trustees, beneficiaries, and participants of various ERISA Employee Benefit Plans ("Plans"),[1] sue twelve banks and their affiliates for breach of ERISA fiduciary duties owed to the Plans or, in the alternative, for defendants' knowing participation in prohibited transactions as non-fiduciary parties-in-interest. Plaintiffs here appeal from judgments entered in the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*) on August 24, 2016, and on

---

[1] Plaintiffs bring their claims on behalf of the participants and beneficiaries of their Plans, including the Caterpillar Inc. Retirement Income Plan, the Caterpillar Inc. Retiree Benefit Program, the Bridgestone Americas Salaried Employees Retirement Plan, the Health Corporation of America 401(k) Plan, the Hospital Corporation of America Retirement Plan, the Baker Hughes Incorporated Thrift Plan, and the International Ladies Garment Workers Union Death Benefit Fund 2 and predecessor plans, as well as on behalf of participants, beneficiaries, and named fiduciaries of all other similarly situated Plans.

6

September 20, 2016, dismissing the complaint for failure to state a claim for which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Both judgments were based on the same reasoning. First, the district court determined that defendants' alleged fraudulent conduct in conducting foreign currency exchange ("FX") market transactions for plaintiffs' Plans was insufficient to plead the banks' ERISA functional fiduciary status. *See Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285 (LGS), 2016 WL 4446373, at \*6–8 (S.D.N.Y. Aug. 23, 2016). Second, the district court ruled that the alternative party-in-interest claim failed in the absence of any allegation that non-party Plan fiduciaries (*i.e.*, the investment managers who arranged the transactions with the defendant banks) had actual or constructive knowledge of the banks' fraud. *Id.* at \*9–10.

In challenging dismissal, plaintiffs argue that defendants acquired functional fiduciary status under ERISA by exercising control over the disposition of Plan assets. Specifically, plaintiffs contend that defendants manipulated the benchmark rates to which the subject FX transactions were tied, effectively allowing them to determine their own compensation for each transaction. Moreover, on appeal, plaintiffs recast their alternative party-in-interest claim, urging that it, too, is supported by defendants' acquisition of ERISA functional fiduciary status with regard to the subject transactions. Defendants respond that the subject transactions were ordinary FX transactions between arms' length counterparties and, as such, did not give rise to functional fiduciary status. Defendants emphasize that they had no influence over the Plans' decisions to enter into the

7

transactions, which were executed pursuant to written instructions negotiated between defendants and the Plans' investment managers. Defendants submit that these instructions, which dictated their compensation and the terms of the transactions' execution, could not confer sufficient control over the disposition of Plan assets to make them fiduciaries, regardless of their alleged misconduct.

In appealing dismissal, as well as the district court's denial of their request for adjournment and leave to amend, plaintiffs fault the district court for imposing a novel contract-evidence requirement for identifying ERISA functional fiduciary status. On *de novo* review of the challenged dismissal, we reject plaintiffs' argument and reach the same conclusion as the district court, *i.e.*, that plaintiffs fail to state plausible ERISA claims because the facts alleged do not show that defendants exercised the control over Plan assets necessary to establish ERISA functional fiduciary status. Because we further identify no abuse of discretion in the district court's denial of adjournment or leave to file a fourth amended complaint, we affirm the challenged judgments in all respects.

## BACKGROUND

### I. Factual Background

This ERISA action challenges the conduct of twelve banks and their affiliates in the FX market from January 2003 through 2014. For purposes of this appeal, in discussing this conduct, we credit

allegations contained in the Second Amended Complaint, which plaintiffs describe as fully capturing all claims against defendants.[2]

The FX market is the world's largest and most actively traded financial market, with defendants holding a combined global market share of 84%. Indeed, as of 2013, defendants acted as counterparties in approximately 98% of United States spot transactions in the FX market.

By way of background, trading in the FX market has a seller exchanging one currency that it holds for another currency that it wishes to acquire. A customer contacts a dealer bank, which provides a "bid," *i.e.*, the price at which the customer can sell the currency it holds, and an "ask," *i.e.*, the price at which the customer can purchase the currency it desires. The difference between these prices is the "bid/ask spread," which forms the basis for the dealer bank's compensation. In an untainted market, competition for customers' orders serves to narrow bid/ask spreads.

A "spot transaction" exchanges a sum of currency at a settled exchange rate on a value date that is within two business days of the transaction. The most basic spot transaction is an order for immediate execution by which a customer purchases or sells currency at the quoted price. Another type of spot transaction, sometimes called a "benchmark transaction," is executed on the basis of a daily fixing rate

---

[2] The alleged conduct has been the subject of several federal civil and criminal enforcement actions detailed in the pleadings, but with the exception of one antitrust action, we do not discuss these further here as they are not relevant to this appeal.

(*i.e.*, a benchmark), which is a published exchange rate for a pair of currencies that is calculated by various third parties at a daily specified time. One of the most commonly used rates for benchmark transactions is the WM/Reuters "4:00 p.m. fix," which is published each day at 4:00 p.m. London time. Fixing rates are presumably determined automatically and anonymously using the median price of actual FX transactions in the 30 seconds before and after a certain time (the "fixing window"). When arranging a benchmark transaction, the dealer guarantees execution at the fixing rate, or at a rate determined by reference to the fixing rate, and derives its compensation based on an agreed-upon markup.

ERISA Plans often trade currency to settle their purchases and sales of foreign securities, or to repatriate dividends, interest, and redemptions that are paid in foreign currencies, rather than as a mode of investment. Thus, the investment managers who invested assets on behalf of plaintiffs' Plans "authorized FX [t]ransactions with Plan assets when [the managers'] investment strategies for a Plan required the exchange of one currency for another." App'x 523, ¶ 218. The Plans' managers would "arrange[] with [d]efendant banks to conduct [an] FX transaction[]," *id.*, ¶ 219, which the banks would then execute pursuant to a direction or written authorization from the managers, each of whom was "an independent pension plan fiduciary," *id.* at 470, ¶ 75 n.28.

Plaintiffs here allege that defendants took advantage of their dominant positions in both the wholesale and retail FX markets[3] to capitalize on their knowledge of customers' order flows as well as to collude with one another to benefit collectively from customer order information, all of which was to the detriment of their customers, including plaintiffs' ERISA Plans. Plaintiffs allege that, toward these ends, defendants manipulated benchmark fixing rates and, in particular, used three primary techniques to exploit vulnerabilities in methods for calculating those rates.[4]

First, defendants individually used or shared customer orders and trading positions to devise strategies for trading in and around the benchmarks. By exchanging information about net customer orders, defendants were able to ascertain likely directional movement of the fixing rate, enabling them to trade so as to amplify that movement. Defendants allegedly employed the following tactics to this purpose: (a) they "cleared the decks" of contrary trade orders sufficiently in advance of the fixing window to eliminate or, at least, diminish the effect of such orders on the fixing rate, *id.* at 451, ¶ 13; (b) they matched or "netted out" customers' buy and sell orders to

---

[3] In this context, the "wholesale market" is the market between banks, whereas the "retail market" is that between banks and non-bank customers, including ERISA plans. The trades in both markets are "over-the-counter," which means that they do not occur on a central exchange containing records of all daily transactions and their prices.

[4] One example of a vulnerability is that present in the calculation of the WM/Reuters Closing Spot Rates. These fixing rates are determined by reference to the median value of the transactions alone and weigh all transactions equally. This calculation's failure to account for the notional size of the quotes and transactions rendered it susceptible to defendants' manipulation through artificial increases or decreases in trading volume.

prevent contrary orders from affecting the fixing rate, *id.*, ¶ 14; (c) they amassed large proprietary currency positions that they traded just before or during the fixing window, *see id.*, ¶ 15; (d) certain defendants sold positions before the fixing window or failed to fill, or delayed filling, orders to manipulate the fixing rate, *see id.*, ¶ 16; (e) defendants broke up large orders into smaller trades, timing them relative to the fixing window to increase their effect on fixing rate calculations, *see id.*, ¶ 17; and (f) they placed orders with each other before the fix to create the appearance of increased trading in the desired direction, a practice known as "paint[ing] the screen," whereupon they would reverse the trades after the fixing window closed, *id.* at 452, ¶ 19.

Second, defendants independently front-ran market-moving customer orders by trading proprietary currency positions before executing significant trades, buying before the customer's order increased the fixing rate or selling before that order decreased the fixing rate.

Third, one defendant bank, Barclays, implanted a mechanism in its electronic trading platform to give itself the functional equivalent of an option contract on any currency trade, in that the platform rejected orders where the market was moving to the customer's benefit during an artificial hold period, but executed orders where the market was neutral or moving to Barclays's benefit.

Plaintiffs further allege that, separate from benchmark manipulation, defendants coordinated the bid/ask spread for various

12

currency pairs, effectively eliminating competition and fixing prices. Moreover, defendants quoted customers different bid/ask spreads based on what they understood a customer was buying or selling, and imposed undisclosed markups or markdowns on the price FX traders quoted to FX sales employees. Defendants also manipulated limit and stop orders[5] at levels above the limit order price to earn a greater spread or markup with their execution.

## II. Procedural History

Plaintiffs filed their initial complaint in this action on June 3, 2015. They filed their First Amended Complaint on November 16, 2015, and, by leave of court, their Second Amended Complaint on April 6, 2016.

The Second Amended Complaint pleads nine claims. Claims I and VI allege defendants' breach of fiduciary duties of prudence and loyalty in violation of ERISA § 404, *see* 29 U.S.C. § 1104; Claims II and VII allege self-interested transactions with Plan assets in violation of ERISA § 406(b)(1), *see id.* § 1106(b)(1); Claims III and VIII allege action on behalf of a party with interests adverse to those of the Plans in violation of ERISA § 406(b)(2), *see id.* § 1106(b)(2); Claims IV and IX allege action causing party-in-interest transactions in violation of ERISA § 406(a)(1), *see id.* § 1106(a)(1); and Claim V alleges knowing participation as non-fiduciaries in party-in-interest transactions in

---

[5] Limit and stop orders are trades conditioned on an exchange rate moving past a particular threshold level.

13

violation of ERISA § 406(a)(1)(A) & (D), *see id.* §§ 1106(a)(1), 1132(a)(3).[6]

On May 19, 2016, three of the defendant banks and their affiliates ("Group One Defendants")[7] moved to dismiss the Second Amended Complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6).

Meanwhile, the district court had granted preliminary approval to settlements involving the remaining nine defendant banks and their affiliates ("Group Two Defendants") in the related *FOREX* antitrust litigation, and had enjoined further prosecution of this action against those defendants because plaintiffs' ERISA Plans were members of the settling classes.[8] Thus, on June 1, 2016, while

---

[6] Claims VI through IX were not asserted against any Group One Defendant. *See* Definition of "Group One Defendants," *infra* note 7.

[7] This subset of defendants, which consists of Credit Suisse AG, Credit Suisse Securities (USA) LLC, Deutsche Bank AG, Morgan Stanley, Morgan Stanley Capital Services LLC, and Morgan Stanley & Co., LLC, was referred to by the district court as the "Non-Settling Defendants," because they were not parties to the preliminarily approved settlement agreement in *In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 13 Civ. 7789 (LGS) (S.D.N.Y. filed Nov. 1, 2013) ("*FOREX* antitrust litigation"), an antitrust case predicated on the same facts as this case and also assigned to Judge Schofield. In their appellate briefs, the parties refer to this subset of defendants as the "Group One Defendants," a designation we adopt in this opinion.

[8] Group Two Defendants comprise Bank of America Corporation; Bank of America, N.A.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Merrill Lynch Capital Services, Inc.; Barclays PLC; Barclays Bank PLC; Barclays Group US Inc.; Barclays Capital Inc.; BNP Paribas Group; BNP Paribas North America, Inc.; Citibank, N.A.; Citigroup Inc.; The Goldman Sachs Group; Goldman, Sachs & Co.; HSBC Holdings PLC; HSBC Bank PLC; HSBC North America Holdings Inc.; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.;

the Group One Defendants' motion to dismiss was pending, the district court ordered plaintiffs to file a third amended complaint removing allegations of collusive activity by the Group Two Defendants in order to conform with the preliminary *FOREX* antitrust litigation settlement. The Third Amended Complaint, filed on July 15, 2016, incorporated all allegations against the Group One Defendants asserted in the Second Amended Complaint. As such, the parties agreed that no new briefing was necessary for the district court to rule on the pending motion to dismiss.

On August 23, 2016, the district court dismissed the complaint against the Group One Defendants pursuant to Fed. R. Civ. P. 12(b)(6). *See Allen v. Bank of Am. Corp.*, 2016 WL 4446373, at *6–10.[9] At an August 31, 2016 conference, the parties agreed that the Group Two Defendants would file a motion to dismiss all counts against them on the same basis.

On September 9, 2016, however, plaintiffs requested a 60-day adjournment to allow them to consider further amendment, positing that there "may be . . . existing contracts" to support their claims. App'x 433–34. The district court denied the request, observing that the complaint had already been amended several times and that

---

JPMorgan Chase & Co.; The Royal Bank of Scotland PLC; The Royal Bank of Scotland Group PLC; RBS Securities Inc.; UBS AG; UBS Securities LLC; UBS Investment Bank; UBS Investment Bank, Americas; and UBS Group AG.

[9] The district court denied that portion of the Group One Defendants' motion seeking dismissal for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *See Allen v. Bank of Am. Corp.*, 2016 WL 4446373, at *2–6.

plaintiffs had not proffered adequate justification for further amendment or delay. Instead, the district court granted plaintiffs' alternative request, to which the Group Two Defendants consented, to file a joint stipulation of dismissal of any outstanding claims. Thus, on September 20, 2016, the district court so-ordered a stipulation from the parties for dismissal of all claims against those defendants.

This timely appeal followed.

## DISCUSSION

On appeal, plaintiffs primarily challenge the district court's determination that the defendant banks were not functional fiduciaries under ERISA, an error plaintiffs maintain requires reversal of the dismissal of their ERISA fiduciary breach claims and non-fiduciary ERISA party-in-interest claims.[10] In any event, plaintiffs maintain that the district court erred in denying them an adjournment and leave to file a fourth amended complaint.

We review *de novo* the dismissal of a complaint pursuant to Fed. R. Civ. P. 12(b)(6), accepting the alleged facts as true and drawing all reasonable inferences in plaintiffs' favor. *See Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). In doing so, we are mindful that a complaint must plead sufficient "factual content" to allow a factfinder "to draw

---

[10] Plaintiffs challenge dismissal of their claims insofar as they are based on defendants' alleged manipulation of fixing rates and stop and limit orders, but plaintiffs do not appeal dismissal of their claims to the extent they are predicated on allegations that defendants charged undisclosed markups to FX bid/ask quotes or engaged in collusive manipulation of FX bid/ask spreads.

16

the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[B]ald assertions and conclusions of law will not suffice" to avoid dismissal, *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal quotation marks omitted), nor will factual "allegations that are wholly conclusory," *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

## I. Fiduciary Duty Claims

With the exception of Claim V, which is discussed in Part II, all claims asserted in the Second Amended Complaint require a showing that defendants engaged in conduct breaching an alleged ERISA fiduciary duty. *See* 29 U.S.C. §§ 1104, 1106(a)(1), (b)(1), (b)(2). "In every case charging breach of ERISA fiduciary duty, . . . the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Accordingly, the question presented by this appeal is whether the banks were performing a fiduciary function when they executed FX transactions for the Plans so as to give rise to ERISA fiduciary status and attending fiduciary duties.

"The definition of 'fiduciary' under ERISA focuses on the exercise, as well as the possession, of authority or control" over a pension plan's assets, without regard to the title of the person

17

exercising such control. *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812–13 (2d Cir. 1987); *accord Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 64–65 (2d Cir. 2006). Specifically, under ERISA, even if a person is not a *named* fiduciary of an ERISA plan,[11] it can be a *de facto* fiduciary if it "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A); *see Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014).[12] Mindful that "Congress intended that ERISA function as a comprehensive remedial statute," *Layaou v. Xerox Corp.*, 238 F.3d 205, 210 (2d Cir. 2001), we construe this definition liberally, *see Frommert v. Conkright*, 433 F.3d 254, 271 (2d Cir. 2006); *see also David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1132 (10th Cir. 2005) (holding that "[i]n Congress's judgment, and consistent with general trust law, parties controlling plan assets are *automatically* in a position of confidence by virtue of that control, and as such they are obligated to act accordingly" (emphasis in original)). Here, there is no question that the FX transactions at issue

---

[11] ERISA defines "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9).

[12] A person can also be a fiduciary if it "renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so," or "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). Because these statutory provisions are not the basis for plaintiffs' functional fiduciary argument, we do not discuss them further.

18

involved monetary assets of plaintiffs' Plans.[13] Thus, the determinative question is whether plaintiffs pleaded facts sufficient to demonstrate defendants' control or authority over these assets. Like the district court, we conclude that plaintiffs did not.

Our analysis begins with the basic proposition, applicable in both the ERISA context and more generally, that "a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's best[] interests rather than his own." *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d at 1134; *see United States v. Skelly*, 442 F.3d 94, 98 (2d Cir. 2006) (explaining relationship of trust and confidence exists with respect to matters entrusted to another's discretion). From this, it necessarily follows that an entity has a fiduciary duty to an ERISA plan if the entity possesses or exercises "*actual* control over the disposition of plan assets." *Blatt v. Marshall & Lassman*, 812 F.2d at 813 (emphasis in original). Whether this control was explicitly granted is irrelevant; what matters is whether the putative fiduciary actually exercised

---

[13] Although plaintiffs cursorily argue that order information for an FX transaction also constitutes a Plan asset, they support that proposition only with a citation to a Department of Labor Advisory Opinion that is irrelevant to the issue. *See* Department of Labor Advisory Op. No. 93-14A (May 5, 1993) (discussing whether assets of trust established by employer as potential source of premium payments for ERISA plan's health insurance were plan assets). Thus, because this issue is not properly presented, *see* Fed. R. App. P. 28(a)(8)(A), we need not address it here, *see In re Tustaniwsky*, 758 F.3d 179, 184 (2d Cir. 2014) ("[I]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." (internal quotation marks omitted)), and we focus our control discussion on the Plans' monetary assets involved in the FX transactions.

19

control.  *See Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d at 63–64.  The principle is not, however, without limit.  An entity "must exercise the requisite degree of control and discretion to be held liable" for breach of fiduciary duty.  *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 21 (2d Cir. 1996); *see Bell v. Pfizer, Inc.*, 626 F.3d 66, 74 (2d Cir. 2010) (identifying examples of conduct not implicating fiduciary duty).

Plaintiffs argue that insofar as the defendant banks fraudulently manipulated benchmark rates to maximize the profit they reaped from each FX transaction, they exercised a sufficient degree of control over the disposition of the Plans' assets plausibly to be denominated ERISA functional fiduciaries.  The argument fails to persuade for a combination of reasons.  To begin, even assuming the alleged manipulation of FX transactions, as well as an attendant increase in costs to the Plans, one factor weighing against the conclusion that the defendant banks controlled the Plans' assets is that the transactions at issue were initiated not by the banks but at the discretion of the Plans' independent investment managers.  Thus, this case is not akin to *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 189 (2d Cir. 2015), in which we identified as an ERISA functional fiduciary a party who determined which of the corporate defendant's creditors to pay, exercised control over money owed to the plans at issue, and failed to remit to those plans assets under his control.  Nor is it akin to *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997), wherein we identified as an ERISA functional fiduciary a defendant who

20

determined which creditors would be paid from a company account on which he was a signatory and which commingled general assets and employee plan contributions.  Rather, the relationship here was "salesmanship," with defendants "matching the customer's desires"—as conveyed by their investment managers—"with available inventory," but otherwise lacking "authority to exercise control unilaterally over a portion of a plan's assets."  *Farm King Supply, Inc. Integrated Profit Sharing & Tr. v. Edward D. Jones & Co.*, 884 F.2d 288, 292 (7th Cir. 1989); *cf. United States v. Litvak*, 889 F.3d 56, 61 (2d Cir. 2018) (explaining that, in context of arms' length, over-the-counter transactions in RMBS bond market, broker-dealer "acts solely in its own interest as a principal," is not agent for its counterparties, and "owes them no special or fiduciary duty").  Such arms' length dealings do not admit an inference that the banks controlled disposition of the Plans' assets so as thereby to be deemed ERISA functional fiduciaries of the Plans.

No different conclusion is warranted by plaintiffs' characterization of defendants as service providers.  That characterization, which defendants dispute, usually applies to accountants, lawyers, and investment advisors, and derives from their contracts or agreements with ERISA plans.  As this court has observed,

> [w]hen a person who has no relationship to an ERISA
> plan is negotiating a contract with that plan, he has no
> authority over or responsibility to the plan and
> presumably is unable to exercise any control over the
> trustees' decision whether or not, and on what terms, to

21

> enter into an agreement with him. Such a person is not
> an ERISA fiduciary with respect to the terms of the
> agreement for his compensation. . . . On the other hand,
> after a person has entered into an agreement with an
> ERISA-covered plan, the agreement may give it such
> control over factors that determine the actual amount of
> its compensation that the person thereby becomes an
> ERISA fiduciary with respect to that compensation.

*F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1259 (2d Cir. 1987).

No allegations here indicate that defendants were able to exercise any control over the Plans' trustees' or investment managers' decisions to enter into FX transactions with defendants. *See id.* Nor do any allegations suggest that agreements stating the managers' instructions for execution of the FX transactions gave defendants "such control over factors that determine the actual amount of [their] compensation." *Id.*[14] Indeed, plaintiffs conceded at oral argument that defendants would not be fiduciaries if they followed the Plans' investment managers' instructions in executing the transactions at issue. *See McCaffree Fin. Corp. v. Principal Life Ins. Co.*, 811 F.3d 998, 1003 (8th Cir. 2016) (collecting cases recognizing that "service provider's adherence to its agreement with a plan administrator does

---

[14] Rather, averments as to the existence of such agreements confirm that defendants themselves did not cause the Plans to enter into any of the transactions at issue, which is an essential element of Claims IV and IX. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 888–89 (1996).

22

not implicate any fiduciary duty where the parties negotiated and agreed to the terms of that agreement in an arm's-length bargaining process"). Plaintiffs do not allege defendants' violation of any specific instructions.

Insofar as plaintiffs rely on allegations of fraud in defendants' conduct of FX transactions to support their fiduciary claims, this court, as well as sister circuits, have held that wrongdoing in performing non-fiduciary services does not transform the alleged wrongdoer into a fiduciary. *See Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d at 19–21 (holding that employer who performed only ministerial functions for plan was not transformed into fiduciary by fraud in carrying out his functions that resulted in some dissipation of plan assets); *see also Rutledge v. Seyfarth, Shaw, Fairweather & Geraldson*, 201 F.3d 1212, 1220 (9th Cir. 2000) (holding that law firm's alleged overcharge for traditional attorney services did not make it ERISA fiduciary); *Reich v. Lancaster*, 55 F.3d 1034, 1049 (5th Cir. 1995) (stating that, in absence of "actual decision making power," "even miscreant professionals . . . who provide necessary services to ERISA plans" are not automatically fiduciaries); *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 538 (7th Cir. 1991) (rejecting argument that consultants become ERISA fiduciaries by "perform[ing] professional functions in a tortious manner, regardless of what capacity they are acting in when their tortious deeds occur"). Thus, while defendants' alleged fraudulent exploitation of vulnerabilities within the system for calculating benchmark rates could raise other legal concerns— whether in tort, contract, etc.—we have no reason to consider that

possibility on this appeal.  We here conclude only that the alleged wrongdoing did not afford defendants the control over the Plans' assets necessary to make them ERISA functional fiduciaries.

Plaintiffs nevertheless maintain that the district court erred in failing to cite and apply the functional fiduciary standard referenced in *United States v. Glick*, 142 F.3d 520 (2d Cir. 1998).  The argument does not persuade.  Plaintiffs acknowledge that *Glick*, a criminal sentencing appeal, merely restates the statutory standard, which, as we have already observed *supra* at 18–20, asks whether the funds involved were Plan assets and whether defendants had any authority or control over those assets.  *See United States v. Glick*, 142 F.3d at 527 (citing 29 U.S.C. § 1002(21)(A)).  Because this is the standard the district court applied, *see Allen v. Bank of Am. Corp.*, 2016 WL 4446373, at *6–8, there was no error in its failure explicitly to reference *Glick*.

Moreover, *Glick* does not support plaintiffs' urged attribution of functional fiduciary status in this case.  It cautioned that,

> the mere deduction of an agent's commission from welfare fund assets does not, in itself, create a fiduciary relationship between the agent and the fund.  The fiduciary relationship in this case [was] created because the agent exercised unhampered discretion in setting the commission rate.  Conversely, an agent with a contractually-established commission rate is not, without other indicia, a fiduciary to the plan.

*United States v. Glick*, 142 F.3d at 528.  The facts pleaded here do not admit an inference that defendants "exercised unhampered

24

discretion" in establishing their compensation for the FX transactions at issue. *Id.* Even assuming that defendants' alleged market manipulations allowed them to secure higher compensation for the FX transactions they conducted than a free market would have indicated, the scheme nevertheless depended on so many different persons and manipulations as to preclude an inference that defendants had an unfettered ability to dictate their compensation for each transaction. Moreover, such an inference is belied by the fact, already noted, that the Plans' independent investment managers initiated the FX transactions at issue and provided instructions for their execution, which themselves informed defendants' compensation.

Accordingly, because the complaint fails plausibly to allege that defendants exercised the control over the disposition of Plan assets necessary to make them ERISA functional fiduciaries, we affirm dismissal of plaintiffs' breach of fiduciary duty claims (Claims I through IV and Claims VI through IX).

## II. Party-In-Interest Claim

On appeal, plaintiffs tie the fate of their party-in-interest claim (Claim V) to that of their fiduciary claims by arguing that the former is predicated on a recognition of ERISA functional fiduciary status as to at least some of the defendant banks and their affiliates. Conceding that their party-in-interest claim, which is premised on violations of ERISA § 406(a)(1)(A) & (D), requires knowledge of fraud, *see* 29 U.S.C. § 1106(a)(1), plaintiffs urge non-fiduciary liability for certain

25

defendant banks as a result of their knowing participation in FX transactions with other defendant banks that were acting as functional fiduciaries and knew of the benchmark manipulations.[15] For the reasons explained in Part I of this opinion, we conclude that no defendant was a functional fiduciary with respect to the transactions at issue and, thus, conclude that plaintiffs cannot secure relief from dismissal on the theory urged in this court. *See Lotes Co. v. Hon Hai Precision Indus.*, 753 F.3d 395, 413 (2d Cir. 2014) (observing that "Court may affirm on any basis for which there is sufficient support in the record, including grounds not relied on by the district court" (internal quotation marks omitted)).[16]

## III.   Denial of Adjournment and Leave To Amend

The district court denied plaintiffs' September 9, 2016 request for a 60-day adjournment to conduct further investigation and, potentially, to amend their complaint, explaining that plaintiffs had amended their complaint "repeatedly," and had "submitted nothing in support of the application, and nothing to suggest that a further amendment would be anything but futile."  App'x 436.  We review denials either of adjournment or of leave to amend for abuse of

---

[15] By contrast, in the district court, plaintiffs argued party-in-interest in the alternative in the event *no* bank was found to be a fiduciary.  Because they do not pursue that theory on appeal, we deem it abandoned.  *See State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004).

[16] Insofar as plaintiffs urge non-fiduciary, party-in-interest liability based on violations of other ERISA provisions, Claim V of the Second Amended Complaint specifically pleads only violations of 29 U.S.C. § 1106(a)(1) and, therefore, we do not consider those newly raised claims here.  *See Harrison v. Rep. of Sudan*, 838 F.3d 86, 96 (2d Cir. 2016).

26

discretion, *see TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014); *Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 99–100 (2d Cir. 2001), unless "denial was based on an interpretation of law," such as futility, in which case our review is *de novo, Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 224 (2d Cir. 2017) (internal quotation marks omitted).

Plaintiffs argue that it was legal error for the district court to conclude that further amendment would be futile in light of their counsel's professed belief that further investigation "may" reveal "existing contracts between Defendants and the ERISA plans" that would show "an ongoing contractual relationship between any Plan and any Defendant[] with respect to FX transactions" or "indicia of [defendants'] control over Plan assets." App'x 434 (internal quotation marks omitted). They maintain that, "[l]ogically, adding allegations of such contracts would remedy what the district court found to be a fatal deficiency" of contract evidence. Appellant Br. at 52.

The argument fails because the district court did not impose a contract-evidence requirement only to conclude that an amendment pleading contract evidence would be futile. Rather, read in context, the district court's futility statement is properly understood to reference plaintiffs' speculative suggestion that they could identify further contracts within the requested adjournment time and, thus, the futility of adjournment. In reaching that conclusion, the district court highlighted plaintiffs' failure to support their motion. Indeed, plaintiffs' application only speculates, based on their counsel's unspecified "experience with previous cases," that there "may be . . .

27

existing contracts" supporting further amendment. App'x 434. Nowhere, even on this appeal, do plaintiffs explain what those contracts might show that would warrant amendment. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d at 505 ("A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."). Nor do they proffer any excuse for their lack of diligence in searching for such contracts earlier, a particularly egregious omission given that they filed their initial complaint on June 3, 2015, proceeded to amend it on November 16, 2015, April 6, 2016, and July 15, 2016, but only proposed to look for further contracts on September 12, 2016. Plaintiffs can hardly profess ignorance of the significance of such contracts because courts routinely consider contract terms as indicators of discretion or control over ERISA plan assets. *See, e.g., Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 87 (2d Cir. 2001); *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987); *see also City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014) (stating that, although plaintiffs' prior amendment was not in response to a motion to dismiss identifying particular pleading defects, "it is unlikely that the deficiencies raised with respect to the Amended Complaint were unforeseen by plaintiffs when they amended").

On this record, we identify neither legal error nor abuse of discretion in the district court's denial of adjournment in anticipation of further amendment, and, therefore, affirm the challenged judgment.

## CONCLUSION

To summarize, we conclude as follows:

1.    Plaintiffs fail to allege facts showing that the defendant banks and their affiliates exercised the requisite level of control over the disposition of Plan assets so as to warrant their identification as ERISA functional fiduciaries with respect to the FX transactions at issue.

2.    Because plaintiffs here pursue their party-in-interest claim not in the alternative to, but in reliance on, their functional fiduciary theory, the claim necessarily fails for lack of the requisite proof of control.

3.    The district court neither committed legal error nor abused its discretion in denying plaintiffs an adjournment to conduct further investigation in anticipation of amending their complaint for a fourth time.

Accordingly, the judgments of dismissal are **AFFIRMED.**