# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of October, two thousand twenty-two.

Present:
>    DEBRA ANN LIVINGSTON,
>        *Chief Judge*,
>    AMALYA L. KEARSE,
>    MICHAEL H. PARK,
>        *Circuit Judges.*

_____

*IN RE:* RENEWABLE ENERGY GROUP SECURITIES LITIGATION

_____

STEVEN ROSA,

>        *Plaintiff-Appellant*,

DAVID RAMSEY & CHRIS OLSON, individually and on behalf of all others similarly situated,

>        *Plaintiffs,*

>        v.                                              22-335

RENEWABLE ENERGY GROUP INC., RANDOLPH L. HOWARD, CYNTHIA J. WARNER, CHAD STONE & TODD ROBINSON,

>        *Defendants-Appellees.*

_____

| For Plaintiff-Appellant: | Ivy T. Ngo (Edward Normand, Velvel (Devin) Freedman & Constantine P. Economides, *on the brief*), Roche Freedman LLP, New York, NY & Miami, FL. |
|---|---|
| | Brian Schall, *on the brief*, The Schall Law Firm, Los Angeles, CA. |
| For Defendants-Appellees: | Michael G. Bongiorno (Jeremy T. Adler, Susan S. Muck, Felicia Ellsworth & Sofie Brooks, *on the brief*), Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY, Boston, MA & San Francisco, CA. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Appellant Steven Rosa ("Rosa") appeals from the January 20, 2022 opinion and order of the district court dismissing with prejudice his Amended Class Action Complaint (the "Complaint") against Defendants-Appellees Renewable Energy Group, Inc. ("REG," or the "Company"), its former CEO Randolph L. Howard, current CEO Cynthia J. Warner, former CFO Chad Stone, and current CFO Todd Robinson (collectively, the "Defendants") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally In re Renewable Energy Grp. Sec. Litig.*, No. 21 Civ. 1832 (DLC), 2022 WL 179830 (S.D.N.Y. Jan. 20, 2022). The Complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10b-5, premised on misstatements concerning the quality of REG's internal accounting and operational controls.[1] According to Rosa, the Defendants defrauded investors when they attested to the adequacy of REG's internal

---

[1] Rosa brought this action as a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired REG securities between March 8, 2018, and February 25, 2021. The district court did not certify a class before dismissing the Complaint.

controls and forecasted earnings in public statements and regulatory filings, despite knowing of or deliberately ignoring glaring deficiencies in the Company's financial forecasting model and mechanisms to detect mechanical issues at its biorefineries. On appeal, Rosa contends that the district court erred in dismissing the Complaint for failure to plead allegations that give rise to a strong inference of scienter. He also argues that the district court erred by denying him leave to amend. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Scienter

We review *de novo* the district court's Rule 12(b)(6) dismissal of Rosa's claims. *See CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017). In doing so, "we must construe [the Complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citation omitted). To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff "must establish that the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009) (internal quotation marks and citations omitted). To survive a motion to dismiss, a securities-fraud complaint must satisfy the heightened pleading standards established by the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b), which require alleging with particularity both the circumstances constituting fraud and the facts supporting a defendant's fraudulent intent. *See* 15 U.S.C. § 78u-4(b); Fed. R. Civ. P. 9(b); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319–24 (2007).

With respect to the scienter requirement, a complaint must contain allegations "giving rise to a strong inference that the defendant acted with the required state of mind." *Emps' Ret. Sys. of Gov't of the V.I. v. Blanford*, 794 F.3d 297, 305 (2d Cir. 2015) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). A "strong" inference is one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314; *see also S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98, 110–11 (2d Cir. 2009). The requisite inference of scienter can be pleaded through allegations "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007)). We review a complaint's allegations of scienter "holistically," considering "*all* of the facts alleged, taken collectively," rather than "any individual allegation, scrutinized in isolation." *Tellabs*, 551 U.S. at 323, 326.

Rosa contends that the Complaint contains allegations strongly supporting the inference that the Defendants knew of or recklessly disregarded REG's internal control deficiencies at the time they made the challenged statements.[2] We disagree. To begin, the Complaint does not adequately allege that the Defendants possessed actual knowledge of deficiencies in the Company's internal controls at the relevant time. Next, recklessness in the securities-fraud context "must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence[.]" *In re Advanced*

---

[2] Because the Complaint contains no allegations supporting a cognizable motive for the Defendants to commit fraud, "the strength of [these] circumstantial allegations must be correspondingly greater." *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001) (citation omitted).

4

*Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015) (internal quotation marks and citations omitted); *see also S. Cherry St.*, 573 F.3d at 109 (defining recklessness as "conscious recklessness—*i.e.*, a state of mind approximating actual intent, and not merely a heightened form of negligence" (citation and emphases omitted)).   The Complaint lacks sufficiently compelling circumstantial evidence to make an inference of recklessness "cogent and at least as compelling as the opposing inference of" mere negligence.   *Tellabs*, 551 U.S. at 314.

Rosa first asserts that the Complaint alleges that on or prior to September 30, 2020, the Defendants acquired actual knowledge of the fuel-blending issue at REG's biorefinery in Seneca, Illinois (the "Seneca Plant"), which required the Company to restate its financial statements for 2018, 2019, and the first three quarters of 2020 "to reflect a $38.2 million adjustment over those periods as a result of the Company not being the proper claimant for certain federal biodiesel mixture excise tax credits ("BTC") on biodiesel it sold between January 1, 2017 and September 30, 2020."   App'x at A-245 to -246; *see also id.* at A-93 to -94 ¶ 214.[3]   As the district court correctly noted, the Complaint "does not allege that the problem was discovered at any particular point in time, including before the filing of [REG's] 3Q20 results."   Special App'x at SPA-11. On appeal, Rosa suggests that the Complaint does, in fact, contain such an allegation, pointing to the contents of REG's February 25, 2021 press release, which disclosed the Seneca Plant problem. Rosa reads this press release as containing an admission that the Company had identified and

---

[3] The BTC is a $1.00 excise tax credit sponsored by the federal government for each gallon of blended fuel that a company blends and then uses or sells to a third-party.   To qualify for the BTC, a company must blend pure biodiesel, known as B100, with at least 0.1% of petroleum diesel to yield B99.9. On February 25, 2021, REG disclosed that "[d]ue to failures in the diesel additive system" at the Seneca Plant, "petroleum diesel was periodically not added to certain loads," which meant that the "customers who received these loads and subsequently added petroleum diesel [were] the proper claimants on these biodiesel gallons," not REG.   App'x at A-246.   REG had applied for BTCs on these sales and included the BTC revenue in their financials, despite not being eligible for the tax credit.

remediated the problem by September 30, 2020, from which it follows that REGI knowingly failed to disclose it in its subsequent November 5, 2020 quarterly report. Rosa misconstrues the press release. Nowhere does the press release admit, implicitly or explicitly, that anyone at REG learned of or remediated the fuel-blending issue at a particular time, let alone by September 30, 2020. Instead, September 30, 2020 marks the end of the third quarter of 2020, which was the final quarter impacted by the February 25, 2021 restatement and IRS settlement. A more plausible explanation for the timing of the press release is that REG discovered the fuel-blending issue at some point during the fourth quarter of 2020, took time to investigate and develop a plan for remedial action, and then divulged the problem prior to announcing its results for the fourth quarter. *See Tellabs*, 551 U.S. at 324 (directing courts to "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff" when assessing scienter for securities fraud).

Concerning recklessness, Rosa asserts that the Complaint adequately alleges that the "Defendants had access to various forms of specific information, written and unwritten, that demonstrated the truth" about REG's inadequate internal controls. Appellant's Br. 37. These allegations amount to little more than speculation that documentation or evidence of internal control deficiencies must have existed and do not "specifically identify the reports or statements containing [the truthful] information," as a plaintiff generally must when "contend[ing] defendants had access to contrary facts." *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 196 (2d Cir. 2008) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). The Complaint alleges that REG employees "should have" known about the Seneca Plant problem and imputes blame on the individual defendants based on their high-ranking status within the Company. App'x at A-41 ¶ 60, A-43 ¶ 64. But even if documentation such as "receipts of loads

6

of petro-diesel" delivered to the Seneca Plant or "month-end [accounting] reconciliations," existed in the form Rosa presumes, he asserts no facts to suggest that senior executives were reckless in failing to consult such material or should have divined from them an intermittent mechanical issue at one of the Company's then-twelve biorefineries. *Id.* at A-41 ¶ 60, A-43 ¶ 64. Such generalized allegations predicated on what the Defendants must have known "[b]y virtue of their responsibilities and activities as a senior officer," *id.* at A-104 ¶ 247, are precisely the kind of conclusory allegations that fail to satisfy the PSLRA's heightened pleading standard, *see Kalnit*, 264 F.3d at 142 ("A plaintiff cannot base securities fraud claims on speculation and conclusory allegations.").

Nor does REG's earlier revision of its April 30, 2020 earnings projection for the second quarter of 2020 support a strong inference of scienter as to the fuel blending failure. Rosa suggests that knowledge of or recklessness regarding reporting errors arising from the mechanical issue at the Seneca Plant can be inferred from REG's June 2020 revision of its second quarter earnings projection, which the Company attributed at the time to calculation errors in its financial guidance model. Besides conflating these different misstatements under the umbrella of "internal controls," Rosa has provided little basis to conclude that an inference of fraudulent intent is rendered more plausible based on these separate episodes, much less one that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" as to both. *S. Cherry St.*, 573 F.3d at 111 (citation and emphases omitted). Rosa also invokes the "core operations" doctrine to buttress his allegations of scienter, arguing that even though "REG's core business was blending, tracking, and selling B99.9 and then obtaining BTCs," the Defendants nevertheless "allowed the Company to miscalculate and publish flawed metrics; amass 40,000 gallons of rogue petro-diesel; make false IRS filings; and certify that it had adequate internal controls."

Appellant's Br. 47.[4]    But Rosa has not adequately alleged that the fuel-blending issue at the Seneca Plant was sufficiently core to REG's business for us to infer that the Defendants were aware of the discrepancy.   To be sure, the Complaint alleges that BTCs were critical to REG's bottom line.   As alleged, however, the Seneca Plant experienced an "intermittent" mechanical problem that led to the "periodic[ ]" failure to add petroleum diesel to certain fuel loads at one of REG's biorefineries.   App'x at A-94 ¶ 215, A-96 ¶ 220.   These facts are insufficient to suggest that the episode constituted a company-wide practice rising to the level of a core operation of which the Defendants were aware.

Furthermore, regarding the guidance-model incident, the PSLRA's safe harbor forecloses Rosa's recklessness arguments.   Rosa argues that accounting errors contained in the guidance model "rolled up" to the Defendants, who recklessly issued REG's April 2020 earnings forecast without noticing those errors.   Appellant's Br. 38.   Under the PSLRA's safe harbor, "a defendant is not liable [for a] forward-looking statement" where "the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010).   The PSLRA provides examples of a "forward-looking statement," including "a statement containing a projection of . . . earnings[.]"   15 U.S.C. § 78u-5(i)(1)(A).   REG's April 2020 earnings forecast thus falls within the PSLRA's safe harbor for

---

[4] The core operations doctrine provides that "a court may infer that a company and its senior executives have knowledge of information concerning the core operations of a business, such as events affecting a significant source of revenue." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 174 (S.D.N.Y. 2021) (citing *Okla. Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 37 (S.D.N.Y. 2019)).   We have not clearly affirmed the validity of this doctrine following the passage of the PSLRA.   *See, e.g.*, *Frederick v. Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) (summary order) (observing that in light of the PSLRA's heightened pleading standard "we have not yet expressly addressed whether, and in what form, the 'core operations' doctrine survives as a viable theory of scienter").   In any event, we do not see an occasion to address the issue given our conclusion that the allegations in the Complaint do not implicate REG's core operations to the extent Rosa asserts.

forward-looking statements. As such, Rosa's recklessness-based arguments are categorically insufficient to prove that the Defendants released REG's earnings forecast with scienter.

Rosa separately argues that even assuming none of the individual defendants acted with the requisite scienter, "someone at a reasonably high level surely knew of or at least recklessly disregarded the truth" about REG's internal controls. Appellant's Br. 51. The Complaint does not contain sufficient allegations to support this theory of unattributed recklessness. Rosa asserts that the "manager of the Seneca Plant must have known that the volume in the petro-diesel tank stopped decreasing and that the monthly inventory reconciliations," which indicated "how much fuel had been produced and sold, were not correct." *Id.* at 51. But even assuming the truth of this allegation, Rosa has not connected a plant manager (or any other unnamed managerial employee) to any alleged misstatement, which is fatal to his argument for corporate scienter. *See Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (rejecting an attempt to predicate securities fraud claims on knowledge of certain employees where the complaint "provides no connective tissue between those employees and the alleged misstatements").

## II. Leave to Amend

"We review denials . . . of leave to amend for abuse of discretion, unless denial was based on an interpretation of law, such as futility, in which case our review is *de novo*." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 227 (2d Cir. 2018) (internal citations and quotation marks omitted). While we have sometimes held denial of leave to amend without explanation, as here, to be an abuse of discretion, *see, e.g.*, *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990), our review of a district court's denial of leave to replead ultimately "involves the appraisal of numerous factors, and a court of appeals exercises considerable discretion in addressing the question," *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) (per curiam);

*see also In re: Tamoxifen Citrate Antitrust Litig.*, 466 F.3d 187, 220 (2d Cir. 2006) ("It is within the court's discretion to deny leave to amend implicitly by not addressing the request when leave is requested informally in a brief filed in opposition to a motion to dismiss.").

Here, the district court dismissed an *amended* complaint, which Rosa filed as permitted by the district court's May 19, 2021 pretrial scheduling order (the "Scheduling Order"). The Scheduling Order also provided that if the Defendants moved to dismiss this amended complaint, Rosa was to file a letter by August 13, 2021, indicating his desire to further amend his pleadings in response to the motion. The Scheduling Order noted that it would be "unlikely that Lead Plaintiff will be granted any further opportunities to amend" and set forth a deadline of September 10, 2021, for Rosa to file such a further amended complaint. Supp. App'x at ASA3–4. After receiving the Defendants' motion to dismiss, Rosa elected not to amend the Complaint and instead opposed the motion to dismiss, including a perfunctory request for leave to amend in his opposition memorandum. In this posture, especially given the terms of the Scheduling Order, it was within the district court's discretion to deny Rosa's request without explication.

Further, our review of the record, as well as Rosa's argument to this Court as to why leave to amend should be granted, supports our conclusion that the district court did not err in denying leave to amend. If allowed to amend the Complaint, Rosa proposes to add an allegation, based on the contents of REG's February 25, 2021 press release, that squarely asserts knowledge of the Seneca Plant issue and the underlying internal control deficiencies by September 30, 2020.[5] But

---

[5] Rosa suggests that a proposed amendment would allege "more explicitly" that the Defendants learned of the fuel-blending incident before September 30, 2020. Reply Br. 11. But under the heightened pleading standard of Rule 9(b), "pleadings cannot be based 'on information and belief.' . . . [T]he allegations must then be accompanied by a statement of the facts upon which the belief is founded." *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir. 1972) (citations omitted). A naked allegation that the Defendants had such knowledge of the fuel-blending problem on or before September 30, 2020, without more, would be insufficient to plead scienter.

10

this proposed amendment would "fail to cure prior deficiencies" identified by the district court and would thus be futile. *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). As noted above, a natural reading of this press release provides no indication as to when REG acquired knowledge of the fuel-blending issue at the Seneca Plant. Rather, the timeframe articulated in the press release more plausibly pertains to the periods for which REG had to revise its financial statements and account for improperly claimed BTCs. Because Rosa seeks to supplement the Complaint with allegations of scienter based on a document that cannot bear the weight of the inference that he ascribes, the district court did not err in denying leave to amend.

\* \* \*

We have considered Rosa's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11